## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

THE MILLTOWN-FORD AVENUE
REDEVELOPMENT AGENCY,

      Plaintiff,

        v.

SB BUILDING ASSOCIATES, L.P., *et al.*,

      Defendants.

Civil Action No. 19-21494 (RK) (RLS)

**MEMORANDUM ORDER**

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon the parties' Cross-Motions *In Limine* to Fix the Date of Valuation of the Subject Property in the condemnation action before the Court. The trial on the amount of just compensation for the taking of the Property is set to begin on May 29, 2024. (ECF No. 180.) On March 8, 2024, Plaintiff Milltown-Ford Avenue Redevelopment Agency (the "Agency") filed its Motion seeking a valuation date as of August 2, 2021. (ECF No. 174.) On March 22, 2024, Defendants SB Building Associates, L.P., SB Milltown Industrial Realty Holdings, LLC, and Alsol Corp. (together, "SB Building") filed an opposition brief and Cross-Motion seeking a valuation date as of the first day of trial. (ECF No. 182.) The Agency filed a combined reply and opposition brief. (ECF No. 186.)

The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court declines to adopt either party's proposed valuation date. Instead, the valuation date of the Property will be May 25, 2022, the date on which the Agency was prepared

to effectuate the taking but was barred from doing so by SB Building's bankruptcy filing made solely and specifically for that purpose.

## I.   BACKGROUND

This matter involves a contested condemnation proceeding over SB Building's 22.4-acre property located in Milltown, New Jersey (the "Property"). (ECF No. 1-2 ¶ 6.) The Agency filed a complaint in November 2019, invoking its power under the Local Redevelopment and Housing Law, N.J. Stat. Ann. 40A:12A-1, *et seq.*, to acquire the Property in the manner provided by the New Jersey Eminent Domain Act of 1971 ("NJEDA"), N.J. Stat. Ann. 20:3-1, *et seq.* (*Id.* ¶¶ 1–9.) The parties agreed in 2020 that the Agency has the legal authority to condemn the Property. (Consent Order, ECF No. 39.) What remains for trial, set to begin before the Undersigned on May 29, 2024, is the amount of just compensation for the taking of the Property. (ECF Nos. 171, 172, 180.) Currently pending are the parties' cross-Motions *In Limine* to set the date of valuation at which the just compensation will be determined. (ECF Nos. 174, 182.) Given the parties' familiarity with this four-and-a-half year-old matter, the Court recites below only the facts necessary to its decision.

### A.   THE NJEDA'S "DECLARATION OF TAKING" PROCEDURE

Under the NJEDA, the condemnor has the ability at any point during the condemnation proceeding to file "when empowered to do so by law . . . a declaration of taking" with a specified "form and content." N.J. Stat. Ann. 20:3-17. Along with the declaration of taking, the condemnor must also "deposit the amount of such estimated compensation with the clerk of the court," which may not be "less than the amount offered pursuant to [Section 6 of the NJEDA]." N.J. Stat. Ann. 20:3-18.[1] If either the statutorily-appointed commissioners have made an award of the property's

---

[1] Section 6 requires that before filing a condemnation complaint, the condemnor must have the property appraised, permit the property owner to accompany the appraiser during the inspection, make a "reasonable

value, or a judgment determining compensation has been entered, "at the time of the filing of such declaration, the amount so deposited shall be not less than the amount of such award or judgment." *Id.*

The amount of a condemnor's *deposit* to carry out the taking is not the amount of just compensation the condemnee will be awarded at the end of the condemnation process; rather it is solely a "deposit of *estimated* compensation," N.J. Stat. Ann. 20:3-18 (emphasis added), with the ultimate amount of just compensation to be determined by the jury. Indeed, "the Fifth Amendment does not forbid the Government to take land and pay for it later." *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 10 (1984) (citing *Sweet v. Rechel*, 159 U.S. 380, 400–03 (1895)). If the deposit turns out to be less than the amount of just compensation awarded by the jury, the condemnee will ultimately be made whole. *See* N.J. Stat. Ann. 20:3-23 ("[I]f the award or judgment fixing such compensation be more than the amount deposited, condemnor shall pay the excess to the condemnee entitled thereto, with interest at a rate to be fixed by the court from the date of the deposit . . . ."); *cf.* Fed. R. Civ. P. 71.1(j) ("If the compensation finally awarded to a defendant exceeds the amount distributed to that defendant, the court must enter judgment against the plaintiff for the deficiency.").

If the condemnor files the declaration of taking and makes the requisite deposit (and complies with other procedural requirements), it gains "the right to immediate and exclusive possession and title to the property . . . ." N.J. Stat. Ann. 20:3-19. However, upon the condemnee's application, the court may "stay the taking of possession" of the property. *Id.*; *Twp. of Piscataway v. S. Washington Ave., LLC*, 947 A.2d 663, 668 (N.J. Super. Ct. App. Div. 2008) (noting that once

---

disclosure of the manner in which the amount of such offered compensation has been calculated," and then offer to acquire the property from the condemnee at a price at least as great as the appraised value. N.J. Stat. Ann. 20:3-6.

the declaration of taking is filed, "the condemnee may apply for a stay of the taking"). Once the condemnor files the declaration of taking, it loses the unilateral right to abandon the action. N.J. Stat. Ann. 20:3-35.[2]

### B.   SB BUILDING'S MOTION TO COMPEL AND THE AGENCY'S PROPOSED DEPOSIT

On June 11, 2021, SB Building filed a Motion to Compel to force the Agency to either file a declaration of taking and deposit just compensation or abandon the condemnation, (ECF No. 47), which the Agency opposed, (ECF No. 51). On August 2, 2021, the Agency filed a proposed Declaration of Taking accompanied by a proposed Order for Payment Into Court. (ECF No. 55.) The Agency proposed to deposit $1.75 million, which was the appraised value of the property provided to the Agency before it filed suit. (ECF No. 55-2 ¶ 5; *see also* ECF No. 1-2 ¶¶ 11–12.) SB Building objected to the Agency's proposed $1.75 million deposit, arguing that the amount did not "fairly represent[] just compensation as of the date of taking." (ECF No. 59 at 2–3 (emphasis in original).) The Honorable Zahid N. Quraishi ordered that the Court would not decide the Agency's proposed Order until the commissioners' report issued later that month. (ECF No. 64.)[3]

No decision was rendered on either SB Building's Motion to Compel or the Agency's proposed Declaration of Taking and Order for Payment Into Court until April 4, 2022, when the

---

[2] As detailed below, the parties agreed for federal procedural law and state substantive law to govern these proceedings. (Consent Order, ECF No. 39.) Federal Rule of Civil Procedure 71.1 makes clear that procedures for a condemnor to effectuate a property by making a deposit under N.J. Stat. Ann. 20:3-17 to -19, before the ultimate amount of just compensation is awarded, are governed by state law. *See* Fed. R. Civ. P. 71.1(j) (providing that a condemnor "must deposit with the court any money required by law as a condition to the exercise of eminent domain and may make a deposit when allowed by statute"); Fed. R. Civ. P. 71.1 advisory committee's note to the original report (specifying that "[i]f the plaintiff is invoking the state's power of eminent domain the necessity of deposit will be governed by the state law"). Therefore, state substantive law under the NJEDA governs the availability of the Agency being able to effectuate a taking through a deposit and declaration of taking in these proceedings.

[3] On August 16, 2021, the commissioners filed their Final Report setting the amount of just compensation at $13.5 million. (ECF No. 65.) The Agency and SB Building filed ten letters in August and September 2021. (ECF Nos. 62, 66, 68, 72, 86; ECF Nos. 63, 67, 75, 81, 84.)

Honorable Cheryl Ann Krause of the Third Circuit Court of Appeals, sitting by designation, denied SB Building's June 11, 2021 Motion to Compel. (ECF No. 112.)[4] Resolution of SB Building's Motion to Compel did not require Judge Krause to address the Agency's proposed Declaration of Taking and Order for Payment Into Court.

On May 5, 2022, the Agency filed a renewed Order for Payment Into Court, again proposing to deposit an estimated compensation of $1.75 million in order to effectuate the Declaration of Taking, (ECF No. 120), which SB Building again opposed, (ECF No. 120). On May 10, 2022, Judge Quraishi signed and entered the Agency's proposed Order for Payment Into Court permitting the Agency to effectuate the taking by depositing an estimated amount of compensation $1.75 million. (ECF No. 124.) Judge Quraishi subsequently declined SB Building's request to stay the Order, (ECF No. 127), and instructed that "[t]o the extent that the parties wish to seek any further relief" from the Order, "any such motion is to be filed by no later" than June 10, 2022. (ECF No. 129.) SB Building did not file a motion for reconsideration, seek to stay the taking, file an appeal to the Third Circuit Court of Appeals, or otherwise further challenge Judge Quraishi's Order in this condemnation proceeding.

### C.   THE BANKRUPTCY PROCEEDING

Instead, on May 25, 2022, SB Building filed for voluntary bankruptcy pursuant to Chapter 11, Title 11 of the United States Code. (Bkr. Case No. 22-14231.)[5] SB Building informed the Court of its bankruptcy petition and noted that the condemnation proceeding was "subject to the automatic stay" pursuant to 11 U.S.C. § 362. (ECF No. 130.)

---

[4] On March 17, 2022, Judge Krause was designated and assigned pursuant to 28 U.S.C. § 291(b) to decide SB Building's June 11, 2021 Motion to Compel. (ECF No. 103.)

[5] As noted in SB Building's letter, bankruptcy petitions were filed on behalf of each of the three moving Defendants—SB Building Associates, L.P., SB Milltown Industrial Realty Holdings, LLC, and Alsol Corp.—that are collectively referred to as "SB Building" in this Opinion. (ECF No. 130.)

A certification by Lawrence S. Berger, included with the bankruptcy filing, explicitly stated SB Building's purpose for filing for bankruptcy and invoking the automatic stay was to frustrate the Agency from effectuating the taking. (Bkr. Case No. 22-14231, Dkt. No. 1 at 13–14.) The certification acknowledged the Agency's authority to "effectuate an immediate taking of title to the Property" by making a $1.75 million deposit to the Court and filing a Declaration of Taking. (*Id.*) The certification articulated SB Building's fear that if the Agency effectuated the taking by making a deposit of estimated fair compensation below what SB Building believed the jury would ultimately determine the Property was worth, the Agency would be unable to pay the fair compensation award. (*Id.*) The certification admits SB Building's goal of seeking bankruptcy protection was "to prevent the immediate taking of the Property until the fair compensation as determined by the jury in the Condemnation Action is paid by the [Agency] to [SB Building] . . . ." (*Id.*)

On July 5, 2022, SB Building filed a Motion for Partial Relief from the Automatic Stay in the bankruptcy proceeding. (Bkr. Case No. 22-14231, Dkt. No. 37.) SB Building sought the bankruptcy court to permit "[a]ll matters in connection with the prospective jury trial in the [federal condemnation proceeding] on the subject of Fair Value of the Subject Property" to proceed, with the exception that the automatic stay would remain in place "for all other matters relating to the Condemnation Action, including but not limited to the possible use of the 'Quick Take' procedure." (Bkr. Case No. 22-14231, Dkt. No. 37-3.) SB Building alleged that if the Agency is permitted to effectuate taking prior to a jury trial, there would be "a very real and substantial risk that the estate . . . will have lost its sole assets and be left with a claim against the Agency that may very well be unrecoverable," and thus reiterated its request that the Agency not be allowed to effectuate the taking prior to a jury trial. (Bkr. Case No. 22-14231, Dkt. No. 37-1 ¶ 67.)

On September 15, 2022, the Honorable Vincent F. Papalia entered an order granting SB Building's Partial Relief from the Automatic Stay in the bankruptcy proceeding. (Bkr. Case No. 22-14231, Dkt. No. 84.) Ruling from the bench, Judge Papalia noted that the Agency "has not appeared in this [bankruptcy] case one way or another," (Bkr. Case No. 22-14231, Dkt. No. 86 at 41:16–20), and that "confoundingly to this Court there was no cross motion or other application for further stay relief to proceed with the rest of the condemnation action" despite the fact that "the parties definitely knew that that was a possibility." (*Id.* at 49:1–12.) The automatic stay, as applicable to the Agency's ability to immediately effectuate the taking by filing an estimated amount of the deposit with the Court, remains in place.

### D.   PROCEDURAL HISTORY

The Court entered a Pretrial Scheduling Order on February 23, 2024 setting out a schedule for the parties to file motions *in limine* to set the date of valuation. (ECF No. 172.) In accordance with that Order, the Agency filed the pending Motion *In Limine* on March 8, 2024, seeking a valuation date as of August 2, 2021—the date on which the Agency was "willing and able" to proceed with the taking. (ECF No. 174.) On March 22, 2024, SB Building filed an opposition brief and Cross-Motion seeking a valuation date as of the first date of trial. (ECF No. 182.)[6] The Agency filed a combined reply and opposition brief. (ECF No. 186.)

## II.   **THE PARTIES' POSITIONS**

The Agency seeks the Court to set the date of valuation as August 2, 2021, which the Agency describes as "the date on which the Agency was prepared to proceed with the taking, but was blocked" from doing so by SB Building. (ECF No. 174-1 at 10.) The Agency argues that cases

---

[6] SB Building filed its Cross-Motion on March 22, (ECF No. 182), and in response to a quality control message issued by the Clerk's Office, re-filed an identical Notice of Cross-Motion on March 26, (ECF No. 184). Both entries are now docketed as pending motions before the Court. However, the Court treats the Cross-Motion filed on March 22, 2024 as SB Building's operative motion.

setting just compensation require protecting the interests of the condemnor from market forces unrelated to its conduct. (*Id.*) The Agency contends that SB Building blocked it from effectuating the taking twice, first by objecting to the Agency's August 2021 proposed Declaration of Taking and deposit and second, when the Court overruled those objections in 2022, filing for bankruptcy and invoking the automatic stay protection. (*Id.* at 11.) The Agency accuses SB Building of using these "procedural machinations" to "prevent[] [the Agency] from protecting itself from inflationary forces" that caused the value of the Property to increase over the past few years. (*Id.*)

SB Building opposes the Agency's proposed August 2021 valuation date. (ECF No. 182-1.) SB Building argues that no law supports the Agency's position that the valuation date can be set at the "date the condemning authority intends to proceed with posting the estimated just compensation deposit." (*Id.* at 6 (emphasis in original).) SB Building argues that under the United States Constitution or the New Jersey Constitution, the valuation date is the "date of the taking." (*Id.* at 12.) SB Building concludes that because the Agency has not yet effectuated the taking— regardless of its alleged reason why—the appropriate valuation date is the first day of trial. (*Id.* at 5.) As a fallback position, SB Building argues that if the Court agrees with the Agency that SB Building blocked the Agency from effectuating the taking by making a deposit, the proper valuation date would be May 25, 2022, the date when SB Building filed its bankruptcy petition that implemented the automatic stay. (*Id.* at 12.)

## III.    DISCUSSION

As explained below, assigning the proper valuation date in a condemnation proceeding traditionally turns on the date of the condemnor's taking or the date the condemnor's actions affected the value of property in a constitutionally-significant way. In the case at bar, it is uncontested that the Agency has not effected a taking. Nor does either party's briefing suggest that

the Agency has taken any action affecting the value of the property. Instead, the Agency presents a *sui generis* request to set the valuation date for a day when the condemnor *attempted* to effectuate a taking—by filing a proposed declaration of taking and deposit of estimated compensation—but was arguably frustrated by the condemnee's opposition.

Given this novel question, the Court's analysis of the parties' Cross-Motions proceeds in several parts. *First*, the Court outlines the constitutional principles of just compensation. *Second*, the Court considers the temporal hierarchy for setting the valuation date under N.J. Stat. Ann. 20:3-30 ("Section 30" of the NJEDA) and finds that the parties have not established that valuation under any of the statutory dates is appropriate. *Finally*, the Court considers the Agency's argument that the valuation date should be the day it was prepared to file its Declaration of Taking but prevented from doing so by SB Building. The Court concludes that the Agency is correct that SB Building obstructed the Agency's ability to protect itself from the Property's rise in price, however, as explained below, the appropriate valuation date is therefore May 25, 2022 rather than August 2, 2021.

### A.   CONSTITUTIONAL PRINCIPLES OF JUST COMPENSATION

When a municipality takes private property for public use, it must pay "just compensation" to the property owner. *See* U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just compensation."); N.J. Const. art. I, ¶ 20; *see also* N.J. Stat. Ann. 20:3-29 ("The condemnee shall be entitled to compensation for the property, and damages, if any, to any remaining property, together with such additional compensation as provided for herein, or as may be fixed according to law."). The NJEDA provides the statutory authority for the exercise of the state's condemnation power by New Jersey and its political subdivisions. The NJEDA does not provide alternative requirements that must be met for exercises of New Jersey's condemnation

authority but rather layers on legislatively-determined "procedural protections required to implement those constitutional mandates" under the United States and New Jersey Constitutions. *Mount Laurel Twp. v. Stanley*, 885 A.2d 440, 441 (N.J. 2005).

"Where the whole of a property is taken," just compensation is calculated as "the fair market value of the property as of the date of the taking, determined by what a willing buyer and a willing seller would agree to, neither being under any compulsion to act." *Comm'r of Transp. v. Silver*, 457 A.2d 463, 467 (N.J. 1983) (citing *Vill. of South Orange v. Alden Corp.*, 365 A.2d 469 (N.J. 1976)). The fair market value generally considers "the property's highest and best use," *Comm'r of Transp. v. Caoili*, 639 A.2d 275, 279 (N.J. 1994) (citations omitted), which is "'the use that at the time of the appraisal is the most profitable, likely use' or alternatively, 'the available use and program of future utilization that produces the highest present land value' provided that 'use has . . . a probability of achievement,'" *Hous. Auth. of New Brunswick v. Suydam Inv'rs, L.L.C.*, 826 A.2d 673, 684 (N.J. 2003) (quoting *Cnty. of Monmouth v. Hilton*, 760 A.2d 786, 789 (N.J. Super. Ct. App. Div. 2000)).

"One of the key components in determining what constitutes just compensation in exchange for an eminent domain taking is the date of valuation of the private property subject to condemnation." *Stanley*, 885 A.2d at 441; *see also Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 11 (1984) ("[I]dentification of the time a taking of a tract of land occurs is crucial to determination of the amount of compensation to which the owner is constitutionally entitled."). Where the condemned property's appraisal is not conducted "according to the correct date of value," the result may be "the reversal of the entire verdict." *City of Ocean City v. Maffucci*, 740 A.2d 630, 638 (N.J. Super. App. Div. 1999) (quotation omitted).

**B.     NEW JERSEY EMINENT DOMAIN ACT'S TEMPORAL HIERARCHY**

The NJEDA sets out a "temporal hierarchy for determining the date of valuation of a property subject to condemnation." *Stanley*, 885 A.2d at 442. Section 30 of the NJEDA states:

> Just compensation shall be determined as of the date of the *earliest* of the following events: (a) the date possession of the property being condemned is taken by the condemnor in whole or in part; (b) the date of the commencement of the action; (c) the date on which action is taken by the condemnor which substantially affects the use and enjoyment of the property by the condemnee; or (d) the date of the declaration of blight by the governing body upon a report by a planning board . . . .

N.J. Stat. Ann. 20:3-30 (emphasis added). Thus, "Section 30 . . . establishes four alternatives for determining the date at which just compensation for the condemned property is to be determined." *Stanley*, 885 A.2d at 441.

Here, neither party gives Section 30 more than glancing consideration in arguing their competing proposed valuation dates. The Agency states in passing that its proposed valuation date is "consistent with" either Subsection (a) or (c), (*id.* at 10), but goes no further to explain how its proposal fits into the statute. SB Building's brief in support of its Cross-Motion *in Limine* does not mention Section 30 at all. Nonetheless, the Court considers whether any of Section 30's dates is met here. (*See* Consent Order, ECF No. 39 ¶ 2 ("This matter will proceed . . . under New Jersey state substantive law as set forth in the [NJEDA] . . . .").)

The Court finds that none of Section 30's provisions govern the date of valuation determination here. Under Subsection (a), the valuation date is when "possession of the property . . . is taken by the condemnor in whole or in part." N.J. Stat. Ann. 20:3-30. The Agency does not argue that it has taken possession of the Property to any extent on any date. Under Subsection (c), the valuation date is when an "action is taken by the condemnor which substantially affects the use and enjoyment of the property by the condemnee." *Id.* The analysis under this subsection turns not

on whether the condemnor has committed to the taking but whether the condemnor has taken an action that affected the value of the condemned property to a constitutionally significant level. *See Stanley*, 885 A.2d at 443–44 (holding that the analysis under Subsection (c) turns not on whether "the taking is certain, but rather [on] whether the effect of that certainty causes an increase or decrease in the property's value such that just compensation requires valuation as of the date of that effect" (quoting the Appellate Division decision below)); *cf. Kirby Forest Indus., Inc.*, 467 U.S. at 14 ("[A] radical curtailment of a landowner's freedom to make use of or ability to derive income from his land may give rise to a taking . . . even if the Government has not physically intruded upon the premises or acquired a legal interest in the property."). The parties offer no argument or evidence that any action by the Agency in any way affected SB Building's "use and enjoyment" of the subject Property or otherwise affected the value of the property. Accordingly, the Court finds that Subsection (c) is inapplicable here.[7]

### C.   VALUATION BASED ON THE DATE SB BUILDING PREVENTED THE AGENCY FROM CARRYING OUT THE TAKING

Absent the NJEDA's temporal hierarchy setting the correct valuation date, the Court considers the Takings Clause principles that SB Building relies on in support of its proposed valuation date and the Agency's argument that an earlier date is required in light of SB Building's actions to prevent the Agency from carrying out the taking.

---

[7] Neither party argues that Subsection (b) applies. Applied strictly, Section 30 would require the date of valuation to be set for November 22, 2019, the date the condemnation complaint was filed in this matter, because that is the "earliest" determinable date among the four options. N.J. Stat. Ann. 20:3-30. That neither party seeks the Court to apply this date reflects their implicit agreement that a strict application of Section 30 is inappropriate. (*See* ECF No. 174-1 at 9 ("While the literal application of Section 30 of the [NJEDA] would require the date of value to be the date of the complaint, under the hierarchy of statutory events a later date may be appropriate . . . .").) Subsection (d), which applies only in the unique situation involving a property in a "blighted area" under the NJEDA, is inapplicable here. N.J. Stat. Ann. 20:3-30.

Generally, a condemnee "is constitutionally entitled to the fair market value of its property *on the date of the taking*." *Kirby Forest Indus., Inc.*, 467 U.S. at 16 (emphasis added). New Jersey cases have observed the same principle, accepting as a default valuation date when the condemnor effectuates the taking. *See Kugler*, 277 A.2d at 875 ("It may be said as a general rule that just compensation in condemnation cases is measured as of the date of the public taking." (citing 3 Nichols, Eminent Domain § 8.5(1) (3d ed. 1965)). Accepting these broad-brush statements, without probing the doctrine further, SB Building's proposed valuation date of the first day of trial, May 29, 2024, has some appeal because the actual date of the taking will not be known by trial. *Kirby Forest Indus., Inc.*, 467 U.S. at 17 (noting that "courts and commissions understandably have adopted the convention of using the date of the commencement of the trial as the date of the valuation" rather than the date of payment because at trial, the factfinder does not know the exact date the condemnor will exercise its option to purchase a property).

However, there is no constitutional imperative that the date of valuation match the date of the taking in every instance, even though in the most common cases the two dates align. Section 30's "temporal hierarchy," *Stanley*, 885 A.2d at 442, reflects this clearly, as it permits a court to set a valuation date for the date a complaint is filed or the date the condemnor's action "substantially affects the use and enjoyment of the property," N.J. Stat. Ann. 20:3-30, neither of which aligns with the date of the taking. New Jersey courts have consistently applied this principle, such as when the New Jersey Supreme Court set a valuation date as of when a municipality's letter substantially affected the landowner's "use and enjoyment" of the property, despite the fact that no constitutional taking had yet occurred. *Twp. of W. Windsor in the Cnty. of Mercer v. Nierenberg*, 695 A.2d 1344, 1347–49, 1358 (N.J. 1997). As the court explained, "[t]he inquiry whether specific governmental action constitutes a taking does not determine whether a landowner's use and

enjoyment of his or her property has been substantially affected by a future condemnor for the purpose of fixing the valuation date that governs the eventual condemnation proceeding." *Id.* at 1356; *see also N.J. Sports & Exposition Auth. v. Giant Realty Assocs.*, 362 A.2d 1312, 1319 (N.J. Super. Ct. Law. Div. 1976) (noting that Section 30 "contemplates that a valuation date may be other than the date of the constitutional taking, subject [of] course to the overall concept of just compensation" (discussed favorably in *Nierenberg*, 695 A.2d at 1353–54)).

As a general matter, New Jersey courts set valuation dates to exclude the effect of a condemnor's action—whether positive or negative—on the value of a property. *See Stanley*, 885 A.2d at 441–42 ("If the actions of the condemnor substantially affected the value of the condemnee's property . . . then the date of those events shall be the date of valuation for just compensation purposes."). An increase in a property's value during the pendency of a condemnation proceeding, assuming there has been no taking or effect on value by the condemnor's actions, redounds to the condemnee's benefit. *See id.* at 444 (finding property owner's right to just compensation included the increase in value between 1997 when the judgment of repose including the property was entered and the date of the taking in 2002 because filing the judgment of repose did not "directly, unequivocally and immediately stimulate[] an upward or downward fluctuation in value"); *Twp. of Piscataway*, 947 A.2d at 672 ("When the property increases in value due to inflation or market factors unrelated to the initiation of the condemnation action, the valuation date must be the date of the taking.").

However, New Jersey courts' determination of a date of taking shows sensitivity to the condemnor's need to be able to protect itself by taking the property. In *Twp. of Piscataway*, the condemnor argued for a strict application of the temporal hierarchy contained in Section 30 of the NJEDA, seeking the court to set the date of valuation as of a date in 1999 when the complaint was

filed (and when the property was less valuable) rather than when the declaration of taking was filed in 2004. 947 A.2d at 664–65. The New Jersey Superior Court, Appellate Division rejected a literal application of the statute, finding it inapplicable to the situation involving "a rise in value between the filing of the complaint and the filing of the declaration of taking." *Id.* at 671. In finding the later date the correct valuation date, the court reasoned that "[s]ince the [NJEDA] grants the condemnor the power to file the declaration of taking when it files the complaint or at any time thereafter, N.J.S.A. 20:3–17, it enables the condemnor to avoid the effects of inflation, or other market forces unrelated to its conduct." *Id.* at 672. As another New Jersey appellate court explained, "arbitrary application" of the statute setting the valuation date is unwarranted when that date "would result in unjust compensation to the property owner." *City of Ocean City v. Maffucci*, 740 A.2d 630, 639 (N.J. Super. App. Div. 1999) (citation omitted). The Court's goal in setting a valuation date must ensure that the date "does not create a valuation *less or more* than just compensation." *Id.* at 638 (emphasis added) (citation omitted).

Ultimately, the Court's analysis for setting the date of taking turns on the mandate for the property owner to receive "just compensation." *See* U.S. Const. amend. V; N.J. Const. art. I, ¶ 20. As explained above, the New Jersey legislature specifically provided a mechanism for a condemnor to effectuate a taking by filing a deposit before the jury sets the amount of just compensation, allowing the condemnor to protect itself by freezing in place the value of a property. The Court finds no authority to suggest that the constitutional imperative for "just compensation" permits the property owner to receive the benefit of the increased value of property where the property owner has stonewalled the condemnor's attempts to effectuate a taking via a legislatively-prescribed pathway. Therefore, the Court thus turns to the Agency's argument that August 2, 2021—the date it filed its proposed declaration of taking—is the correct valuation date.

The Agency's argument that the correct date of valuation is August 2, 2021 is based on the premise that its proposed Declaration of Taking and Order for Payment Into Court, (ECF No. 55)—which SB Building opposed—were proper at the time. The Agency describes August 2, 2021 as "the date on which the Agency was prepared to proceed with the taking, but was blocked" from doing so by SB Building. (ECF No. 174-1 at 10.) While the Court finds some merit to the Agency's reasoning, the record does not bear out that August 2, 2021 is an appropriate valuation date.

Where a condemnor files a declaration of taking and a deposit of estimated compensation, the date of valuation for the purposes of determining just compensation at trial is the date the declaration of taking was filed. *See Twp. of Piscataway*, 947 A.2d at 671 (affirming trial court's decision to set the valuation date at the date the condemnor filed the declaration of taking). Had the Agency filed a Declaration of Taking and Order for Payment Into Court on August 2, 2021, the taking likely would have been procedurally and substantively proper. Before filing its condemnation complaint, the Agency complied with N.J. Stat. Ann. 20:3-6's requirement that it appraise the property pursuant to a specified procedure. (Compl., ECF No. 1-2 ¶¶ 10–12; *see also id.* Ex. B, ECF No. 1-2 at *43–196.) The appraisal set the Property's value at $1.75 million as of August 15, 2019. (*Id.* at *44.) The NJEDA permits the condemnor to file a declaration of taking "[a]t any time" after filing the action. N.J. Stat. Ann. 20:3-17. The condemnor must deposit an amount of "estimated compensation" with the court that is at least equal to "the amount offered pursuant to [Section 6 of the NJEDA]." N.J. Stat. Ann. 20:3-18. This is precisely what the Agency did here: it offered $1.75 million, (ECF No. 55), which was the amount that it offered under Section 6.[8]

---

[8] SB Building's filings objecting to the Agency's proposed Declaration of Taking and Order for Payment Into Court do not contest these facts. Instead, SB Building argued that the proposed $1.75 million deposit did not "fairly represent[] just compensation <u>as of the date of taking</u>." (ECF No. 59 at 2–3 (emphasis in original).) However, the NJEDA Section 18 makes clear that there is no requirement for the deposit to equal

However, the Court finds no support for the Agency's belief that it was required to gain Court approval before effectuating the taking by filing a Declaration of Taking and making a deposit. Section 17 permits the condemnor to file "[a]t any time . . . after the institution of an action . . . a declaration of taking." N.J. Stat. Ann. 20:3-17. Nothing in the statute suggests that a condemnor needs court approval or to engage in a lengthy valuation process over the amount of the deposit before the condemnor can effectuate the taking this way. *See Hous. Auth. of City of New Brunswick*, 826 A.2d at 682 (recognizing that the condemnor "may file a 'declaration of taking' . . . after the institution of a condemnation action," after which "the condemnor is entitled to immediate and exclusive possession of and title to the property" (citations omitted)). There is no basis to conclude that the reason the Agency did not effectuate the taking in August 2021 was due to SB Building's flurry of written objections to the Agency's proposed Declaration of Taking and Order for Payment Into Court. Rather, the Court concludes the delay was attributable to the Agency's decision to file a motion seeking the Court's blessing for its action instead of simply filing the Declaration of Taking and deposit as authorized by statute. Therefore, August 2, 2021 is not the appropriate valuation date.

While SB Building's actions in August 2021 did not bar the Agency from effectuating the taking, its decision to file for bankruptcy protection in May 2022 surely did. On May 5, 2022, the Agency filed a renewed Order for Payment Into Court. (ECF No. 120.) The Court signed and entered the Agency's proposed Order for Payment Into Court five days later, permitting the

---

the amount of expected just compensation as of the date of taking. Instead, Section 18 explicitly provides that the only deposit due in order to effectuate the taking under Sections 17 is the amount of the appraisal originally offered pursuant to Section 6. The only time a larger deposit is statutorily required is when "an award has been made by commissioners" or "a judgment determining compensation has been entered," in which case the deposit must be at least as great as the award or judgment. N.J. Stat. Ann. 20:3-18. It is undisputed that on August 2, 2021, the commissioners had not yet issued their award, which was not entered until August 16, 2021. (ECF No. 65.)

Agency to effectuate the taking by depositing an estimated amount of compensation $1.75 million. (ECF No. 124.) The Court then explicitly overruled SB Building's objections and request to stay the Order, (ECF No. 127), and instructed the parties to file any motion relating to the Order—such as a motion to "stay the taking of possession" pursuant to N.J. Stat. Ann. 20:3-19—within one month. (ECF No. 129.) SB Building did not file for reconsideration of the Court's Order, seek appellate relief from the Court's Order, or request the Court to stay the Agency taking possession pursuant to N.J. Stat. Ann. 20:3-19.

On May 25, 2022—approximately two weeks after Judge Quraishi approved the Agency to take possession of the Property by making the estimated $1.75 million payment—SB Building filed for voluntary bankruptcy and invoked the Bankruptcy Code's automatic stay provision pursuant to 11 U.S.C. § 362. (ECF No. 130.)[9] SB Building explicitly acknowledged in its bankruptcy filings (1) that in light of the Court's May 10 Order, the Agency had the authority to "effectuate an immediate taking of title to the Property" by making a $1.75 million deposit with the Court, and (2) SB Building's sole purpose for filing for bankruptcy was "to prevent the immediate taking of the Property" until after trial. (Bkr. Case No. 22-14231, Dkt. No. 1 at 13–14.)

Therefore, the Court finds May 25, 2022 as the proper date for the valuation. That is the date on which, unlike in August 2021, SB Building's action actually barred the Agency from effectuating the taking and freezing the Property's value under N.J. Stat. Ann. 20:3-19. At that point, the Court had approved the Agency's request to carry out the taking and overruled SB Building's objection to stay its Order. (ECF No. 124.) Just two weeks later, SB Building filed for bankruptcy and invoked the automatic stay, not camouflaging that its sole purpose was to prevent

---

[9] The Agency explained that it must undergo a bureaucratic approval processes and could not post $1.75 million immediately upon the Court approving its proposed Order for Payment Into Court. (ECF No. 186 at 12.)

the Agency from seeking protection under N.J. Stat. Ann. 20:3-19's value-freezing mechanism. This move effectively barred the Agency from protecting itself as envisioned by the NJEDA. *See Twp. of Piscataway*, 947 A.2d at 672 (noting that N.J. Stat. Ann. 20:3–17 "enables the condemnor to avoid the effects of inflation, or other market forces unrelated to its conduct"). To hold otherwise would permit SB Building—as the admitted architect of the Agency's inability to effectuate the taking in May 2022—to profit from its maneuver. Nothing about the Constitution's requirement of "just compensation" contemplates such gamesmanship to infect the determination of value SB Building must receive for the Property.

Indeed, SB Building acknowledges the appropriateness of a May 2022 valuation date over the August 2021 date, writing that if the Court agrees that the valuation date should account for its efforts to block the Agency from effectuating the taking, "then the only date of valuation other than the trial date, that makes any sense would be May 25, 2022, the day the Agency was blocked by SB's bankruptcy petition from posting the $1,750,000 and filing the declaration of taking after Judge Quraishi's May 10, 2022 Order permitting the Agency to do so." (ECF No. 182-1 at 12.)

Nonetheless, SB Building raises several objections to the Court adopting this approach. SB Building characterizes the Agency's proposal to effectuate the taking through a deposit of only $1.75 million as an attempt to gain a "bargaining or litigational advantage" over SB Building. (ECF No. 182-1 at 8 (quoting *Hous. Auth. of City of New Brunswick*, 826 A.2d at 681); *see also* ECF No. 59 at 4.) However, nowhere in either its original opposition to the proposed deposit or brief in support of its pending Cross-Motion does SB Building address how the Agency would gain an edge in litigation by filing a declaration of taking. Once the condemnor files the declaration of taking, it loses the right to unilaterally abandon the action. N.J. Stat. Ann. 20:3-35. SB

Building's speculation that the Agency was "never prepared to put up the money," (ECF No. 182-1 at 12), is belied by the Agency's commitment to the condemnation.

Some suggestion of why SB Building opposed the $1.75 million deposit is gleaned from a review of the bankruptcy proceedings. A certification SB Building submitted in connection with its bankruptcy filing asserted that the Agency lacks funds to pay SB Building fair compensation and that SB Building's purpose of seeking bankruptcy protection was "to prevent the immediate taking of the Property until the fair compensation as determined by the jury in the Condemnation Action is paid by the [Agency] to [SB Building] . . . ." (Bkr. Case No. 22-14231, Dkt. No. 1 at 13–14.) Assuming, *arguendo*, this was SB Building's true purpose, this does not justify SB Building objecting to the proposed Declaration of Taking or the Court denying it. The solution to SB Building's purported concern is contained in the NJEDA itself. As explained above, the NJEDA permits the court, upon the condemnee's application, to "stay the taking of possession" of the property or "authorize possession to be taken upon prescribed conditions." N.J. Stat. Ann. 20:3-19. To the extent SB Building was concerned about the Agency's ability to pay an ultimate jury award, seeking relief under the stay provision would have permitted the Court to limit the Agency's rights over the Property in the interim—thus preserving SB Building's use of the property until trial—while permitting the Agency to commit to the taking and lock in the date of valuation. As the New Jersey Superior Court explained in *Twp. of Piscataway*, if the "the condemnee [] appl[ies] for an order staying the taking of possession" under Section 19, "only the taking of possession [] is deferred" and the declaration of taking and making of the deposit are not "set aside, or otherwise rendered ineffectual." 947 A.2d at 673.

SB Building argues that what the Agency characterize as "procedural machinations," (ECF No. 186 at *2), are litigation positions that SB Building is entitled to take to enforce its rights.

Indeed, there is support from the idea that a condemnee should not be penalized in setting the valuation date where its actions are taken to stand upon its rights. In *Twp. of Piscataway*, the court rejected the condemnor's argument that setting the valuation date when the condemnor filed the declaration of taking was unfair because "the delay . . . [in] filing of the declaration of taking resulted from the [condemnees'] efforts to avoid condemnation." 947 A.2d at 664–65. The Court held that the condemnees "should not be penalized solely for pursuing . . . legal and statutory rights." *Id.*

This general principle is inapplicable here. First, the "legal and statutory rights" the condemnee sought to defend in *Piscataway* were different from those SB Building litigated here. In *Piscataway*, part of the five-year delay between the filing of the complaint and the declaration of taking was due to the condemnees fighting the condemnor's right to condemn their property on various grounds in the first place. 947 A.2d at 666. The Appellate Division's decision affirming the trial court's decision "sustaining Piscataway's right to condemn the property" did not issue until 2004—five years after the complaint was filed. Therefore, the court noted that "[t]he law does not require landowners to meekly yield to the State's claim to condemn his or her land." 947 A.2d at 672 (quoting *Utah State Rd. Comm'n v. Friberg*, 687 P.2d 821, 834 (Utah 1984)). In contrast here, SB Building's litigation stratagems were not based on fighting the condemnor's right to condemn, which was previously agreed to, (Consent Order, ECF No. 39), or even the amount of the just compensation, which will be determined at trial. Rather, SB Building's objection was based on objections to the amount of the *deposit*. As explained in the section above, accepting a less-than-desirable amount of deposit in no way prevented SB Building from seeking a stay of the Agency taking possession or being awarded just compensation to make up the difference in the event the jury award was larger.

**<u>ORDER</u>**

For the reasons set forth above, the Court will not adopt the valuation date proposed in either the Agency's Motion *In Limine*, (ECF No. 174), or SB Building's Cross-Motion *In Limine*, (ECF No. 182). The valuation date of the Property will be May 25, 2022. Therefore,

**IT IS** on this 12th day of April, 2024, **ORDERED** that:

1. The Agency's Motion *in Limine* (ECF No. 174) is **DENIED**;

2. SB Building's Motion *in Limine* (ECF No. 182) is **DENIED**;

3. The date of valuation of the Property will be May 25, 2022;

4. The Clerk's Office is directed to **TERMINATE** the motions pending at Docket entries 174, 182, and 184.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**