**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE MILLTOWN-FORD AVENUE REDEVELOPMENT AGENCY, <br><br> Plaintiff, <br><br> v. <br><br> SB BUILDING ASSOCIATES, L.P., *et al.*, <br><br> Defendants. | Civil Action No. 19-21494 (RK) (RLS) <br><br> **MEMORANDUM OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon two motions: one for a New Trial (ECF No. 266, the "New Trial Motion") filed by Plaintiff Milltown-Ford Avenue Redevelopment Agency (the "Agency") and another to Amend Condemnation Award for Post-Verdict Relief and Just Compensation (ECF No. 284, the "Relief Motion") filed by Defendants SB Building Associates, L.P., SB Milltown Industrial Realty Holdings, LLC, and Alsol Corporation (together, "SB Building").

As to the New Trial Motion, SB Building filed an opposition (ECF No. 280), and the Agency filed a reply (ECF No. 281). As to the Relief Motion, the Agency filed an opposition (ECF No. 290). The Court has considered the parties' submissions and resolves the matters without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Agency's New Trial Motion is **DENIED** and SB Building's Relief Motion is **DENIED**.

**I.      BACKGROUND**

    **A.      Factual & Procedural History**

Given the multitude of decisions already published in this matter, the Court summarizes only the facts necessary to resolve the pending Motions. This matter involves a post-trial but still-contested condemnation proceeding over a 22.4-acre property owned by SB Building and located in Milltown, New Jersey (the "Property"). This condemnation action was commenced on November 22, 2019 in the Superior Court of New Jersey, Middlesex County, Law Division. (ECF No. 1 at 2.) It was later removed to this Court. (*See id.*)

Prior to trial, on August 21, 2024, the Court issued a Memorandum Order "set[ting] the date of valuation for the Property as September 4, 2024," "which was the valuation date originally requested by . . . SB Building."[1] (*See* ECF No. 228 at 1–2.)

As is well-known, the Court held a six-day jury trial in this matter from September 4 to 11, 2024 to determine the value of a 22.4-acre property in Milltown, New Jersey. The verdict sheet—approved by all parties, (Tr. at 828)[2]—contained four questions, which the Jury answered as follows:

> 1. What is the value of the subject property as of the date of valuation without offsets or deductions?  **$26,900,000**
> 2. What, if any, is the amount of the costs for demolition and removal of the debris from the site to be deducted from the value of the subject property?  **$1,250,000**
> 3. What, if any is the amount of off-tract improvements and costs to be deducted from the value of the subject property?  **$0**
> 4. Based on your determination as to questions one, two and three, what is the just compensation to be paid to the Defendants for the taking of the subject property?  **$25,650,000**

---

[1] It is not lost on the Court that SB Building had extensively briefed, pre-trial, the date or dates it sought the Court to utilize for valuation purposes—none were the date of the filing of the Complaint of November 22, 2019. (ECF No. 182.) Hence, it appears that SB Building is seeking to have it both ways: a particular date for valuation of the subject premises and yet another date, years before, for purposes of seeking lost rental revenue.

[2] Citations to "Tr." refer to the transcript of the trial proceedings. (*See* ECF Nos. 246–50, 252.)

(ECF No. 254 (Jury's answers emphasized).) The Agency argues (and SB Building agrees) that the Jury's answer to Question 3 shows that the Jury determined the "highest and best use" for the Property is continued industrial use. (ECF No. 266-1 at 20.) In order for the industrial use to be realized, a purchaser would have to dispose of debris on the Property. (*Id.*) The Agency's demolition expert, Vajira Gunawardana, testified that this would cost $6,306,418, which must be offset against the value of the Property as per Question 2. (*Id.* at 21.) The crux of the Agency's New Trial Motion is that by not adopting Gunawardana's figure, the Jury must have improperly concluded that debris from the demolition could be reused (and therefore had positive value to a hypothetical purchaser); the Agency argues that no evidence in the record supports this conclusion. (*Id.* at 21–24.) The Agency also objects to portions of the summation by SB Building's counsel's that they contend encouraged this improper conclusion. (*Id.* at 24–27.) The Agency concludes that the Jury's answer to Question 2 was "irrational and not reasonably related to the evidence produced at trial." (*Id.* at 27.)

Post-trial, after receiving proposed orders for final judgment by the parties (*see* ECF Nos. 259, 61), the Court entered an Order for Final Judgment Fixing Just Compensation (the "Final Judgment") on September 27, 2024. (ECF No. 264.) The Final Judgment "constitutes a complete adjudication of the claim for just compensation," and is "a Final Judgment notwithstanding any future claims relating to *interest* or environmental contamination of the property." (*Id.* at 4 (emphasis added).) Although both parties provided input and indeed provided the draft final judgment to the Court for its review and signature, the final judgment does not include a "carve-out" regarding SB Building's request to recover for lost rents.

The "future claims relating to interest" clause pertains exclusively to the two types of interest enumerated earlier in the Final Judgment: (i) post-judgment interest under 28 U.S.C.

3

§ 1961 and (ii) prejudgment interest. (ECF No. 264 at 3.) Post-judgment interest is set "at the rates specified in 28 U.S.C. § 1961 from the date of entry of the within Order for Final Judgment to the date of payment." (*Id.*) Prejudgment, on the other hand, "may be requested either by way of an amended Order for Final Judgment or, if the parties cannot agree, shall be the subject of a *post-judgment motion* to be filed by any of the Defendants within 28 days of the entry of this Order for Final Judgment."[3] (*Id.* (emphasis added).)

### B. Certification of Lawrence Berger in Support of SB Building's Motion

In support of its motion, SB Building appended a Certification of Lawrence Berger (owner and principal of SB Building), dated December 31, 2025 ("Berger Certification") purporting to evidence "reductions in the rental stream it could otherwise have earned by reason of the threat of condemnation for many years." (ECF No. 284-1 at 5.) The Berger Certification states, *inter alia*, that "[t]he impacts of the cloud of condemnation over the Property have particularly worsened since the Milltown Redevelopment Agency filed its eminent domain case in late 2019, and has been further exacerbated with the conclusion of the trial and jury award." (ECF No. 284-2 ¶ 5.) Mr. Berger then noted two tenants who vacated the property, one in 2023 and another at an unspecified date. (*Id.* ¶¶ 6, 7.) He further alleges that he "has been unable to obtain any tenancy other than two month to month tenancies occupying about 50,000 square feet of the property because of the uncertainty that the tenant will be able to remain at the Property given the condemnation action." (*Id.* ¶ 9.) Accordingly, he says the property went from "generating almost $1 million per year in net income . . . to a net annual rent of less than $100,000 per year." (*Id.* ¶ 10.) He claims that "[t]he impact . . . from the filing of the condemnation complaint in 2019 to

---

[3] The deadline for Defendants' motion for prejudgment interest was extended to November 27, 2024 (*see* ECF No. 275) and again to January 30, 2025 (*see* ECF No. 283).

present of losses in market rental income [] far exceed[s] any rents actually received." (*Id*. ¶ 11.) Aside from citing two tenants, one long-term and the other of unknown duration, among other conspicuous lapses, Berger fails to provide any data as to the state of the warehouse rental market in the geographical area and during the relevant time-period, any comparables, or any historical data setting forth the rental history of the subject property, which SB Building owned and operated for more than two decades.

## II. MOTION FOR POST-VERDICT COMPENSATION

In this Motion, SB Building seeks three adjustments to the final judgment as provided in the Final Judgment. First, SB Building argues the jury's determination of "just compensation" is insufficient and SB Building must, instead, "be paid the monetary equivalent of his property *on the date of payment*" to receive appropriate "just compensation." (ECF No. 284-1 at 2 (emphasis added).) The second request is for damages "as a result of impacts to the property's cash flow from (at least) the date of filing the complaint in condemnation to the date the owner receives payment." (*Id*. at 4.) Third, and in the alternative to the second request, SB Building seeks "interest for the period from the date of filing the case before the court (November 22, 2019) to the date of payment of the jury award (which has yet to occur)," i.e., pre-judgment interest. (*Id*. at 6.)

The Agency argues that the Relief Motion is "untimely and barred" because "during the multiple communications and conferences with the Court and opposing counsel leading to the entry of Final Judgment, SB Building never raised or sought to preserve the right to seek such post-verdict relief."[4] (ECF No. 290 at 8.) Finally, the Agency argues this motion brought pursuant

---

[4] The Agency reiterates that "[t]he sole item that SB Building actually did raise and preserve was to amend the Final Judgment to seek prejudgment interest." (ECF No. 290 at 8.)

to Federal Rule of Procedure ("Rule" or "Rules") 60(b) seeking to modify the Final Judgment would not fit under the "catch-all prong" or any of 60(b)'s grounds for relief. (*Id*. at 9.)

### III.    DISCUSSION

At trial, a jury valued the Property at $25,650,000. Now, SB Building seeks additional compensation from the Agency via three potential avenues: (1) compensation for any change in valuation from jury award to payment (which has not happened yet); (2) compensation from reduced cashflow due to the pending threat of taking; and (3) prejudgment interest accrued from the date of the filing of the case to the date of payment. The Court will only order additional relief if it is provided for in the Final Judgment or is appropriate under a rule or statute.

As stated, the Final Judgment makes no mention of an adjustment for any change in value from the valuation date SB requested, which was the first date of the trial, to the date of payment. In addition, as stated, the Final Judgment fails to include any opportunity to seek damages from the date of the commencement of the action for lost rental income. The Final Judgment does, however, provide that prejudgment interest may be sought through a post-judgment motion. Thus, the Court will first address SB Building's two requests for non-interest compensation. As they sit outside the contours of what was contemplated in the Final Judgment, any possible relief on those bases must come through Rule 60(b) as it provides the proper mechanism to modify the Final Judgment.

####    A.    Rule 60(b)

Federal Rule of Civil Procedure 60(b) provides five specific grounds for relief from a judgment or order as well as a catchall provision under Rule 60(b)(6) for "any other reason that justifies relief." Fed. R. Civ. P. 60(b). "Disposition of a motion under Rule 60(b) is within the discretion of the trial court." *Jackson v. Ivens*, 565 F. App'x 115, 119 (3d Cir. 2014). The Third

Circuit "has consistently held that the Rule 60(b)(6) ground for relief from judgment provides for extraordinary relief and may only be invoked upon a showing of exceptional circumstances." *Fonzone v. Trib. Corp.*, 608 F. App'x 76, 78 (3d Cir. 2015). Sufficient "exceptional circumstances" exist only where "an 'extreme' and 'unexpected' hardship will result" "without relief from the judgment. *Budget Blinds, Inc. v. White*, 536 F.3d 244, 255 (3d Cir. 2008) (quoting *Mayberry v. Maroney*, 558 F.2d 1159, 1163 (3d Cir. 1977)).

      **B.**      **Compensation for Change in Valuation from Jury Award to Payment**

SB Building has not met the required showing of an exceptional circumstance under Rule 60(b)(6) sufficient to modify the Final Judgment and receive compensation for a change in valuation from the date of the jury award.

SB Building states it only seeks to preserve its "right to seek the satisfaction of this element of its just compensation claim after payment has been made" since payment is still outstanding. (ECF No. 284-1 at 3–4.) The Agency argues there is insufficient "'extraordinary circumstances' [to] warrant[] amendment of the Final Judgment Fixing Just Compensation" and SB Building "fails to establish there has been a 'substantial delay' or that the value of the property has changed materially" as required by *Kirby Forest*. (*Id.* at 10 (citing *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 17–18 (1984)).)

It is true that a "motion, by the owner of condemned land, to amend a condemnation award" can be brought under Rule 60(b). *See Kirby Forest Indus., Inc.*, 467 U.S. at 18. However, "exceptional circumstances" must still be shown. *See United States v. 27.93 Acres of Land, More or Less, Situate in Cumberland Cnty., Commonwealth. of Pa. Tract No. 364-07*, 924 F.2d 506, 517 (3d Cir. 1991). Under *Kirby Forest*, a finding of "exceptional circumstances" is barred without (i) "a *substantial* delay between the date of valuation and the date the judgment is paid" and (ii) a

7

*material* change in the value of the land during that time. *See Kirby Forest Indus., Inc.*, 467 U.S. at 18 (emphasis added).

SB Building's request for change in compensation from the jury award until the date of payment is not barred at this juncture because SB Building could not have contemplated this request at the time of the award. The requested relief is necessarily dependent on a *substantial* lag in payment and *material* change in valuation—two factors that do not materialize until long after the jury renders its verdict. (*See* ECF No. 284-1 at 4.) In any event, SB Building has presented no evidence to reasonably conclude that there has been anything close to a substantial delay or that that the valuation has changed materially. There is no doubt that "exceptional circumstances" do not exist at this juncture and the Court notes that it is likely they never will. Thus, the request for compensation for change in valuation from the date of the jury verdict is **DENIED**.

C.  **Compensation for Diminution of Value from Condemnation**

SB Building next requests compensation for diminished income from November 2019 (the date of the filing of this case) until the payment of the judgment, which is something that SB Building could have foreseen and is thus barred.

The Agency effectively argues SB Building waived their right to seek this type of relief as it "should have been raised long ago, preserved in the Final Pretrial Order, and presented at trial." (ECF No. 290 at 11.) They further assert, in any event, "[l]ost rents are not . . . a separable category of compensation." (ECF No. 290 at 12.)

For this request, SB Building points to N. J. Stat. Ann. § 20:3-31, which provides:

> Interest as set by the court upon the amount of compensation determined to be payable hereunder shall be paid by the condemnor from the date of the commencement of the action until the date of payment of the compensation; provided, however, that there shall be excluded from the amount upon which interest shall be calculated, all moneys deposited pursuant to Article V hereof; and provided,

8

> further, that interest payable hereunder shall be subject to abatement for rents and profits derived from the property by the condemnee during the period for which interest is payable hereunder, and/or for the fair rental value of such property or any portion thereof occupied by the condemnee during such period.

N. J. Stat. Ann. § 20:3-31.

As an initial matter, SB Building has not presented the Court with any authority to support its request for compensation for lost rental income, since § 20:3-31 merely provides for "[i]nterest as set by the court." (*See* ECF No. 284-1 at 4–6.) Moreover, relief for diminution of rental income was not previously contemplated in the Final Judgment or otherwise. (*See* ECF Nos. 254, 64.) Unlike the request for compensation for the change in value following the jury award, this request was entirely foreseeable, and as explained by the Agency: "SB Building has long been aware of the putative basis for a 'lost rental income' claim, but chose not to preserve or present same at trial." (ECF No. 290 at 12.) At trial, SB Building did not seek, as part of its recovery, a jury's award for reduced revenue attributable to the condemnation proceeding. In addition, SB Building failed to provide the jury with any evidence—in the form of expert testimony or otherwise—regarding the same. Similarly, with respect to the Relief Motion, SB Building did not provide this Court with any reliable basis to make its own calculation.

Therefore, because there is no substantive basis for compensation for diminution of rental income and no "exceptional circumstances" present for relief under Rule 60(b), the request for non-interest compensation for the diminution of rental income is **DENIED** with prejudice.

### D. Prejudgment Interest

The final relief sought is for prejudgment interest (*see* ECF No. 284-1 at 6), as contemplated in the Final Judgment (*see* ECF No. 264 at 3). SB Building seeks, as an alternative to compensation for lost rental income, "interest for the period from the date of filing the case before the court (November 22, 2019) to the date of payment of the jury award (which has yet to

9

occur)." (ECF No. 284-1 at 6.) SB Building asks the Court to "set[] [] the appropriate interest rate . . . for interest from November 22, 2019 until the date the judgment is paid in full." (*Id*.)

The Agency argues that in a case involving a "'[s]traight condemnation' procedure," "[t]he question of how much compensation is due to the property owner is then determined at trial" and thus "such an award of interest is precluded." (ECF No. 290 at 13 (quoting *Kirby Forest Indus., Inc.*, 467 U.S. at 3–4).) They assert that the *Kirby Forest* decision "determined that if the condemnor pays the property owner before or at the time the property is taken, no interest is due on the award." (*Id*. at 14 (citing *Kirby Forest Indus., Inc.*, 467 U.S. at 11).) Further, the Agency argues the "property owner has had possession and any rental income received offsets its entitlement to pre-judgment interest." (*Id*. at 14.)

The parties have stipulated that this matter shall proceed procedurally "in accordance with the provisions of Fed. R. Civ. P. 71.1(k) and under New Jersey's state substantive law as set forth in the New Jersey Eminent Domain Act, N.S.J.A. 20:3-1, *et seq*." (ECF No. 39 at 2–3.) As the Supreme Court of New Jersey has stated, "the Eminent Domain Act of 1971 . . . establishes that interest on a condemnation award runs from the date of the commencement of the action until the date of payment of compensation [] and not from the date of valuation which serves an entirely different statutory purpose." *Casino Reinvestment Dev. Auth. v. Hauck*, 745 A.2d 1163, 1164 (N.J. 2000).

However, any entitlement to prejudgment interest is a statutory—rather than constitutional—right, unlike the interest "beginn[ing] on the date of the taking and end[ing] when the government makes payment." *Twp. of Piscataway v. S. Washington Ave., L.L.C.*, No. A-0356-10T3, 2011 WL 3667616, at *4 (N.J. Super. Ct. App. Div. Aug. 23, 2011) ("The constitutional obligation begins on the date of the taking and ends when the government makes payment by

10

depositing the value with the court.") (citing *State by State Highway Comm'r v. Seaway, Inc.*, A.2d 313, 315 (N.J. 1966)). New Jersey courts have construed this prejudgment interest statute "flexibl[y] . . . on a case-by-case basis to determine . . . [what, if anything] will best indemnify the condemnee for the loss of use of the compensation . . . from the date on which the action for condemnation was instituted." *Id*. at *5 (citing *Wayne Twp. in Passaic Cnty. v. Cassatly*, 349 A.2d 545, 550 (N.J. Super. Ct. App. Div. 1975) (internal quotations omitted)). Under New Jersey law, it is within a court's discretion whether and how to award interest in a condemnation action. *See Twp. of W. Windsor v. Nierenberg*, 785 A.2d 929, 934 (N.J. Super. Ct. App. Div. 2001) (reviewing trial court's decision as to pre- and post- judgment interest in a condemnation action for abuse of discretion).

Importantly, this statutory interest is not automatic and is abated in certain circumstances. *See, e.g., Twp. of Piscataway*, 2011 WL 3667616 (denying interest under § 20:3-31 when there was no loss that required compensation to the condemnee from the date the condemnation action was commenced); *see also State v. Nordstrom*, 253 A.2d 163, 166 (N.J. 1969) (noting certain "New Jersey cases . . . have denied interest . . . because the condemnee had not been hurt in any significant way prior to the [condemnor's] taking title or possession"). For example, if "'the owner has not been disturbed in the possession, and has had a profitable use of the premises, or has received the rents for them pending the appeal, these circumstances should be taken into account and the interest abated accordingly.'" *City of Ocean City v. 2825 Wesley Ave. Condo. Ass'n*, 796 A.2d 291, 294 (N.J. Super. Ct. App. Div. 2002) (quoting *Nordstrom*, 253 A.2d at 165). In other words, interest is to be abated if "the condemnee continues undisturbed in its possession and enjoyment of the property during the pendency of the proceeding." *Id*.

11

The question for the Court is then whether interest under § 20:3-31 is appropriate and necessary to compensate SB Building. As an initial matter, the parties have not cited—and the Court has not found—any instance in which a federal court applied, analyzed, or even referenced § 20:3-31. More importantly, however, taking into account the circumstances surrounding this taking and the speculative harm shown, SB Building has failed to demonstrate that any interest is warranted here.

*First*, this is a "straight condemnation" where the Agency—as condemnor—filed a complaint in condemnation but did not immediately take title of the property (and still has not to this date). *See Kirby Forest Indus., Inc.*, 467 U.S. at 3. *Second*, for the avoidance of doubt, the Final Judgment specifies that "post-judgment interest will accrue on the Judgment at the rates specified in 28 U.S.C. § 1961 from the date of entry of the within Order for Final Judgment to the date of payment." (*See* ECF No. 264 at 3.) Thus, SB Building will receive post-judgment interest from the date of the Judgment. *Third*, like in *Township of Piscataway*, the valuation date here (the first date of the trial as requested by SB Building) was "later than the date of the complaint," which "put [Plaintiffs] in the same position that they would have been if they had received cash on the date of the complaint." 2011 WL 3667616, at *4. This is significant because the valuation date here—the first date of the jury trial—encapsulates the change in fair market value from the time the case was commenced. *Fourth*, SB Building "retained actual possession and continued use of the [property] long after the declaration of taking was filed." 2011 WL 3667616, at *2. To be sure, there would be a different outcome here if the Agency took immediate possession of the property.

*Fifth* and finally, the damages attributed to the commencement of the condemnation action, as alleged in the Berger Certification, are highly speculative and difficult, if not impossible, to properly quantify. (*See generally* ECF No. 284-2.) The Court notes that SB Building has had

possession of the Property through the commencement of this action in 2019 and continued to earn millions from the Property. Moreover, it is unclear whether any losses can be properly attributed to the commencement of the condemnation action. The Court does not know what SB Building did to maximize the ability to rent the property and maximize its marketability. Notably, parts of the Property were dilapidated, lacked "functional plumbing or running water," and were littered with tens of thousands of pounds of mixed debris, diminishing the appeal to potential renters. (*See* Daubert Hearing Transcript ("Hr'g Tr.") at 122:1–22.) SB Building has not shown that they were damaged in a substantial and quantifiable way from the commencement of this action. The same is true as to the representations of Mr. Berger, who is clearly an interested party, and of whose Certification is devoid of any usable data from which the Court can make any reliable calculation or quantification of lost revenue, to the extent there was any. Lastly, SB Building has failed to provide any relevant analysis by an expert or qualified individual regarding the same.

For the foregoing reasons, the Court denies the award of any prejudgment interest to avoid "overcompensat[ing]" SB Building for a period they were in possession of the subject property and because they failed to "demonstrate[] a loss attributable to delayed payment." *See Twp. of Piscataway*, 2011 WL 3667616, at *1, 5 (finding "no interest [under § 20:3-31] is necessary to indemnify defendants for the period between the date of the complaint and [the valuation date]"). The request for prejudgment interest is **DENIED** with prejudice.[5] With SB Building's Motion denied *in toto*, the Court now moves to the Agency's New Trial Motion.

---

[5] The Court also addresses the date by which the Agency may abandon the taking. On December 2, 2024, the Court entered a Consent Order that extended "[t]o the extent applicable, the deadline under N.J.S.A. 20:3-35 for the Agency to abandon the taking in the instant matter . . . to January 30, 2025." (ECF No. 283.) On January 24, 2025, the Agency requested that the Court make a determination as to the deadline to abandon the taking. (*See* ECF No. 291.) Three days later, SB Building filed a letter of their own. (*See* ECF No. 292.) The Court's Order accompanying this Memorandum Opinion extends, to the extent applicable, the deadline under N.J.S.A. 20:3-35 for the Agency to abandon the taking in the instant matter.

E.   **Motion for New Trial**

The Agency's Motion for New Trial is brought pursuant to Federal Rule of Civil Procedure 59(a). Rule 59(a) provides: "The court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a)(1). The Third Circuit explains how to apply the Rule's standard:

> While a court may grant a new trial under Rule 59 "for any reason for which a new trial has heretofore been granted in an action at law in federal court," Fed. R. Civ. P. 59(a)(1)(A), it should do so only when "the great weight of the evidence cuts against the verdict and . . . [] a miscarriage of justice would result if the verdict were to stand," *Springer v. Henry*, 435 F.3d 268, 274 (3d Cir. 2006) (internal quotation marks omitted); *see Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352–53 (3d Cir. 1991) (new trial should be granted only where the verdict "cries out to be overturned" or "shocks [the] conscience"). A district court's power to grant a new trial is limited "to ensure that [it] does not substitute its judgment of the facts and the credibility of the witnesses for that of the jury." *Delli Santi v. CNA Ins. Cos.*, 88 F.3d 192, 201 (3d Cir. 1996) (internal quotation marks omitted).

*Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 386 (3d Cir. 2016). The decision whether or not to grant a new trial is committed to the "sound discretion" of the Court. *See Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002, 1017 (3d Cir. 1995).

The Agency's New Trial Motion fails to meet the high bar set for overturning the Jury's verdict and permitting a new trial here. The fact that the Jury did not adopt the Agency's expert witness's testimony that the offset should be $6,306,418 does not establish that the Jury's $1,250,000 value is against the weight of the evidence. This argument fails because the Jury may have simply found Gunawardana incredible. The Jury may have disbelieved Gunawardana's testimony because he was offered as an expert in demolition (rather than environmental engineering or remediation), (Tr. at 235–38), did not test the debris himself for asbestos, (Tr. at

14

280–81, 294–95), and relied on demolition costs provided by a non-testifying, third-party demolition contractor, (Tr. at 244–45). The Jury's verdict with respect to Question 2 may simply reflect their performance of one of their primary functions: to evaluate the credibility of witness testimony. *See United States v. Wise*, 515 F.3d 207, 214 (3d Cir. 2008) ("[W]e 'must be ever vigilant . . . not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [our] judgment for that of the jury.'" (quoting *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005))). Given the potential flaws in Gunawardana's testimony that may have led the Jury to depart downwards from $6,306,418, the Court cannot find that the "great weight of the evidence cuts against" the $1,250,000 offset the Jury found. *Springer*, 435 F.3d at 274.

This conclusion is unchanged by the Agency's complaints about an argument SB Building's counsel made in summation. (ECF No. 266-1 at 24–27.) In summation, SB Building's counsel argued about the reusability of debris at the Property. (Tr. at 808.) The Agency's counsel objected, and the Court sustained the objection and issued a curative instruction. (*Id*. at 822–27.) For this argument to justify a new trial, the Agency must show that it was "'reasonably probable' that the verdict was influenced by [these] prejudicial statements." *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 207 (3d Cir. 1992) (quoting *Draper v. Airco, Inc.*, 580 F.2d 91, 97 (3d Cir. 1978)). The Court's curative instruction to the Jury read as follows:

> Mr. DellaPelle's argument that there may be monetary value in the supposed crushed debris is improper. There is no evidence adduced at trial establishing a monetary value of the crushed debris in this case. Accordingly, you must ignore that portion of Mr. DellaPelle's argument in that regard, and you cannot consider that argument in your determination of fair market value in this case.

(Tr. at 827.) The Court presumes that the Jury followed its clear instruction to disregard the improper portion of SB Building's counsel's summation. *See United States v. Hakim*, 344 F.3d

15

324, 330 (3d Cir. 2003). The Agency can "overcome that presumption only in limited circumstances where it can show, among other things, that 'there is an overwhelming probability that the jury [was] unable to follow [the instructions].'" *United States v. Newby*, 11 F.3d 1143, 1147 (3d Cir. 1993). For the reasons explained in the prior paragraph, there is no basis to conclude from the $1,250,000 offset that the Jury ignored the instruction here.

## CONCLUSION

For the reasons set forth above, SB Building's Relief Motion is **DENIED** and the Agency's New Trial Motion is **DENIED**. An appropriate Order accompanies this Opinion.

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: January 29, 2025

17